```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION
```

City of Columbus, Ohio,            :

      Plaintiff,             :

  v.                                 :        Case No. 2:15-cv-1864

                                        :        JUDGE GREGORY L. FROST
Sunstar Columbus, Inc., et al.,             Magistrate Judge Kemp

      Defendants.            :

## REPORT AND RECOMMENDATION

This case is before the Court to consider plaintiff City of Columbus, Ohio's motion for remand and attorneys' fees. Defendant Ridgestone Bank filed a response. The City has not filed a reply and the time for doing so has passed. For the following reasons, the Court will recommend that the motion to remand be granted and the request for attorneys' fees be denied.

### I. BACKGROUND
#### A. The Lawsuit

On April 22, 2015, the City filed suit in Franklin County Municipal Court, Environmental Division, against Sunstar Columbus Inc. an Ohio corporation. According to the complaint, Sunstar is the owner, occupant and/or interested party of real property located at 1289 East Dublin-Granville Road, Columbus, Ohio 43229, by virtue of a warranty deed filed with the Franklin County Recorder. Sunstar has been the property owner of record since August 20, 2013. The suit seeks injunctive relief arising from Sunstar's alleged violation of the Ohio Revised Code and the City's zoning, building, and housing codes at the real property, a former hotel.

The City named Ridgestone as a defendant because it has a mortgage interest in the property and has obtained a certificate

of judgment that could be adversely affected by the action. Ridgestone is a Wisconsin-chartered bank with a place of business in Schaumburg, Illinois. Additionally, the City named the Franklin County Treasurer as a defendant because of a potential claim for an interest in the property for unpaid and future taxes that could be adversely affected by the action. The action is in rem with respect to the real property.

### B. The Notice of Removal

On May 12, 2015, Ridgestone removed the case to this Court asserting this Court's diversity jurisdiction. According to the notice of removal, the City is seeking a judgment that Ridgestone pay for the abatement costs of the alleged nuisances and for curing the alleged violations of the City code. Ridgestone contends that the costs for abating and curing result in an amount in controversy in this case of minimally $150,400.00.

Further, Ridgestone asserts that the Treasurer and the real property either have been fraudulently joined or are merely nominal parties and, either way, must be disregarded for diversity jurisdiction purposes. Additionally, Ridgestone states that the Treasurer should be realigned as a plaintiff because the Treasurer's interest and the purpose of the City's lawsuit are not adverse.

The focus of the notice of removal, however, is the City's alleged fraudulent joinder of Sunstar. Ridgestone acknowledges that Sunstar is the titled owner of the property. However, Ridgestone contends that Sunstar was fraudulently joined for the following reasons.

Ridgestone explains that, prior to the City's filing this lawsuit, the City Attorney filed another nuisance suit in which Sunstar was named as a defendant, but Ridgestone was not. In that first nuisance suit, the City Attorney obtained a temporary restraining order authorizing the City Attorney to forcibly

remove all occupants from the real property and to close and secure the premises.  The hotel on the property was closed in late January, 2014.  Following a bench trial in the first nuisance suit, the environmental court judge ordered that the real property be closed for one year from the judgment date of May 27, 2014.  Ridgestone contends that all the relief the City is seeking in the current lawsuit has already been obtained in the first nuisance suit.

Specifically, Ridgestone contends that, to the extent the City is seeking injunctive relief for nuisance activity in this suit, this precise relief has already been obtained by virtue of the first nuisance judgment.  As a result, Ridgestone contends, Sunstar is a fraudulently joined party and must be disregarded for diversity purposes.  In further support of its position, Ridgestone states that the City knows that Sunstar does not have the funds to pay the fines or to abate any alleged nuisances.

The crux of the basis for Ridgestone's belief that Sunstar has been fraudulently joined has been set out in detail in the notice of removal at paragraphs 35 through 38.  According to Ridgestone, on March 6, 2015, it obtained its judgment against Sunstar and foreclosure of its mortgage on the real property.  Ridgestone has requested that the property be sold at sheriff's sale where it intends to bid.  Ridgestone avers that the City filed this lawsuit to prevent Ridgestone from obtaining clear title to the property in the event Ridgestone is the successful bidder at the sheriff's sale.  Apparently, prior to filing the foreclosure action, Ridgestone learned through a conversation with counsel representing the City Attorney that the City Attorney will "never" permit a hotel to operate on the property regardless of ownership.  In light of this, Ridgestone claims that the nuisance abatement/code violation issues are a cover for the City's intention to "extract money from Ridgestone to 'clean-

up' and rehabilitate the Real Property when the City has no desire that the Real Property re-open for business as an open-corridor hotel." Ridgestone states that "all of the Emergency Orders and Violation Notices attached to the City's Complaint in the Second Nuisance Lawsuit were issued to Sunstar after the City Attorney had forcibly removed Sunstar from the Real Property and boarded up the Real Property." According to Ridgestone, "the City's primary purpose in filing the Second Nuisance Lawsuit is to hold Ridgestone financially responsible for Sunstar's alleged nuisance activity and bootstrap Sunstar's alleged nuisance activity and other alleged Columbus City Code violations as a cloud to the title to the Real Property should Ridgestone purchase the Real Property at sheriff's sale."

Alternatively, Ridgestone asserts that Sunstar should be viewed as a nominal party for diversity jurisdiction purposes. This is so, Ridgestone contends, because Sunstar has no control over the property given that it has been locked out during the time when the alleged nuisance and code violations occurred.

## II.  THE MOTION TO REMAND

The City has moved to remand, contending that removal was improper because Sunstar, as the property owner of record, was properly joined as a defendant. According to the City, the Court is required to consider the complaint as it existed at the time the removal petition was filed in order to determine whether federal jurisdiction exists. Further, the City argues that Ridgestone, as the removing party, bears the burden of establishing federal jurisdiction. The City asserts that as long as it has a colorable claim under Ohio law against Sunstar, there is no fraudulent joinder to support removal.

The City argues, quite succinctly, that it has made sufficient allegations against Sunstar to impose liability. The City explains that, as the record owner of the property, Sunstar

-4-

is the main defendant in this action.  In the City's view, Ridgestone was only named as a defendant because its mortgage interest in the property might be affected.  According to the City, inspections were undertaken, violations were discovered, and emergency orders and code violation notices were issued to Sunstar.  Further, the property remained out of compliance, a warning letter was issued to Sunstar, the property continued to be out of compliance, and the orders have been neither appealed nor obeyed.

Under the above scenario, the City contends that it is reasonable to conclude that Ohio law might impose liability on Sunstar.  In fact, the City explains, Ridgestone itself believes that, as the property owner, it is Sunstar's responsibility to perform the remediation to comply with the code enforcement orders.  In support of this position, the City has submitted an affidavit from William Sperlazza, an Assistant City Attorney, attesting to an email exchange with Ridgestone's counsel confirming its view of Sunstar's liability.

The City also requests an award of attorneys' fees and costs incurred as a result of the removal.  It contends that such an award is warranted in this case in light of the complete lack of support for Ridgestone's argument that Sunstar has been fraudulently joined as a defendant.

In response, Ridgestone acknowledges that, viewing only the City's complaint, the City has a compelling argument in favor of remand.  However, Ridgestone contends, looking beyond the complaint, the City's argument is much less so.  Ridgestone reiterates in detail the factual allegations of its notice of removal.  Relying on these allegations, Ridgestone makes two primary arguments in support of its position that Sunstar's joinder was fraudulent because the City does not have a colorable claim against Sunstar.

Ridgeston's first argument is that the judgment in the prior nuisance suit estops the City from bringing the nuisance claims against Sunstar in this suit.  According to Ridgestone, under Ohio law, estoppel by judgment is part of res judicata.  As Ridgestone sees it, the City admits that the nuisance activities alleged in this lawsuit are violations of the judgment in the first nuisance suit.  This is evidenced, Ridgestone argues, by the contempt motion filed by the City in the first lawsuit.  According to Ridgestone, the City's claim against Sunstar is not a colorable claim because a state court's imposition of liability against Sunstar will not result in an award to the City greater than it already has against Sunstar in the first suit.  Rather, Ridgestone argues, relying on Trautwein v. Sorgenfrei, 58 Ohio St.2d 493, 495 (Ohio 1979), that the City can seek to enforce the nuisance judgment against Sunstar by seeking to hold Sunstar in contempt, not by prosecuting another nuisance lawsuit seeking the same relief.

Ridgestone's second argument is that the doctrine of collateral estoppel prevents the City from having a colorable claim against Sunstar in this lawsuit.  Again, citing to Trautwein, Ridgestone argues that the issue of Sunstar's liability for maintaining a public nuisance on the property is integral both to this lawsuit and the first one, resulting in the City's being collaterally estopped from filing a claim against Sunstar in this lawsuit.

Ridgestone makes additional arguments in support of its position that the motion to remand should be denied.  For example, Ridgestone asserts that the City's claim against Sunstar is brought in bad faith.  This alleged bad faith, according to Ridgestone, is sufficient under Sixth Circuit law to demonstrate fraudulent joinder.  Ridgestone contends that bad faith is evident because there is no legal basis for the City's bringing

this suit while also pursuing a contempt motion in the first case.  Additionally, Ridgestone asserts that the City's bad faith is further demonstrated by its desire to hold Ridgestone monetarily liable and cloud the title to the property prior to the sheriff's sale.

Ridgestone also reiterates its view that the Treasurer and the real property must be considered nominal or formal parties to this action and therefore must be disregarded for purposes of determining diversity jurisdiction.  Significantly, Ridgestone states that there is no basis for a claim against these parties "since they are not defined as an 'owner' of the Real Property.  See COLUMBUS CITY CODE 4703.01(E)(2)."  Ridgestone also suggests, but only by way of footnote, that Sunstar could also be viewed as a nominal party.

Finally, Ridgestone argues that it is entitled to have a neutral forum decide the merits of the City's claim.  In support of this position, Ridgestone relies on <u>Cleveland Hous. Renewal Project v. Deutsche Bank Trust Co.</u>, 621 F.3d 554, 557 (6th Cir. 2010).  Ridgestone contends that, as in that case, the issue here is one of "intense local concern" and should not be decided by a "locally-elected municipal judge."

With respect to the issue of attorneys' fees, Ridgestone argues that because it had an objectively reasonable basis for removing the case, attorneys' fees would not be appropriate, even if remand is ordered.

### III.  <u>DISCUSSION</u>

28 U.S.C. §1441(a) provides that "any civil action brought in a State court which the district courts ... have original jurisdiction may be removed by the defendant ... to the district court of the United States for the district and division embracing the place where such action is pending."  Of course, one of the most often-used bases for removing a case is that the

district court would have jurisdiction based on diversity of citizenship, which exists "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and cost, and is between ... citizens of different states," see 28 U.S.C. §1332(a)(1), and that is the provision which the defendants relied on when they removed the case.

The City does not dispute Ridgestone's characterization of the amount in controversy here.  Consequently, the amount in controversy requirement is not the focus of the parties' filings.  Rather, the primary focus of the parties' filings is whether complete diversity can be found to exist.  More specifically, the issue before the Court is whether Sunstar has been fraudulently joined for purposes of defeating diversity jurisdiction.  There is no challenge to Ridgestone's characterization of the Treasurer and the property as nominal parties to be disregarded for purposes of determining diversity jurisdiction.

### A.  Fraudulent Joinder

When deciding a motion to remand involving fraudulent joinder, the Court may "'pierce[] the pleadings' to consider summary-judgment-type evidence . . . ," but "the proper standard for evaluating that evidence remains akin to that of a Rule 12(b)(6) motion to  dismiss, and is arguably even more deferential."  Walker v. Philip Morris USA, Inc., 443 Fed. Appx. 946, 954 (6th Cir. 2011).  Contested issues of fact must be construed in the plaintiff's favor.  Id.

Fraudulent joinder is "a judicially created doctrine that provides an exception to the requirement of complete diversity." Coyne ex rel. Ohio v. American Tobacco Co., 183 F.3d 488, 493 (6th Cir. 1999). quoting Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998).  A claim of "fraudulent joinder," while not necessarily implying actual fraudulent conduct on the plaintiff's part, does involve an assertion that

-8-

the resident defendant was joined solely, and without any legal basis, for the purpose of defeating the other defendants' right to remove the case on diversity grounds.  The non-moving party's motive for joining the non-diverse party to the lawsuit, however, is "immaterial" when determining fraudulent joinder.  See Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C., 176 F.3d 904, 907 (6th Cir. 1999).  Rather, the Court must perform a type of qualitative analysis of the claims asserted against the non-diverse defendants, and do so using an objective standard.

As one might suspect, the law relating to this aspect of removal jurisdiction is stringent, and it requires removing defendants to do more than simply demonstrate that the non-diverse defendants might be able to prevail on a Rule 12(b)(6) motion to dismiss.  A standard that loose would result in the removal of large numbers of cases where the parties are not completely diverse, and require a federal court to determine the merits of claims that are not really within its jurisdiction.  In a case where a defendant claims fraudulent joinder, the question is whether there is "arguably a reasonable basis for predicting that the state law might impose liability on the facts involved." Alexander v. Electronic Data Sys. Corp., 13 F.3d 940, 949 (6th Cir. 1994), quoting Bobby Jones Garden Apartments, Inc. v. Suleski, 391 F.2d 172, 176 (5th Cir. 1968).  In other words, "[f]raudulent joinder occurs when the non-removing party joins a party against whom there is no colorable cause of action" Saginaw Hous. Comm'n v. Bannum, Inc., 576 F.3d 620, 624 (6th Cir. 2009).  Thus, in deciding whether diversity jurisdiction exists here, the Court's task is limited to determining whether the complaint states any claim against Sunstar that is even arguably permitted under state law.

As explained by the City in its motion to remand, the complaint states a claim against Sunstar arguably permitted under

Ohio law.  According to the complaint, various inspections of the property revealed violations of the Columbus Housing and Nuisance Abatement Codes, Titles 7, 33, and 47.  As a result, the complaint alleges the property constitutes a public nuisance under R.C. §3767.41(A)92)(a) and Columbus City Code §4703.01(F)(1).

These Columbus City Code chapters outline the obligations of various persons, including the owner of a property, relating to Health, Sanitation and Safety (Title 7), Zoning (Title 33), and Nuisance Abatement (Title 47).  These chapters define "owner" to include "the owner of record as shown on the current tax lists of the county auditor..." see §703.16, "any person ... who is the owner of record as shown on the current tax list of the county auditor" see §3303.15, and "the owner of record as shown on the current tax list of the auditor of Franklin, Delaware, Pickaway, Licking, or Fairfield County, Ohio" see §4703.01.

The sections of Title 7 relevant here, §705.03, §707.03, and §709.03, all are directed, minimally, to the responsibilities of the property owner.  Section 3305.08 provides that "[t]he owner of premises ... shall be responsible for compliance with the standards ... and for the elimination of any violation found on the premises regardless of whether certain responsibilities may also be placed on operator or agents and regardless of any agreement between the owner and anyone else."  Section 4701.09 provides that a notice of violation may issue to the owner and advise the owner that conditions must be corrected.

Certainly, given the language of the Columbus City Code chapters outlined above, it is reasonable to conclude that Sunstar may be held liable for the violations alleged in the complaint.  In fact, Ridgestone concedes as much in its response.  Ridgestone seeks to distract from this reality, however, by focusing on the issues of res judicata and collateral estoppel.

This tactic is to no avail.  Res judicata and collateral estoppel are affirmative defenses directed to the merits of the City's claims.  As explained above, considering Ridgestone's arguments on these issues would fall squarely within the realm of matters the Court is not to address when considering an allegation of fraudulent joinder.

Ridgestone also asserts that, because the City is seeking to hold Sunstar in contempt in the other case, it acted in bad faith in bringing this action.  According to Ridgestone, under Sixth Circuit precedent, this alleged bad faith is sufficient to establish that Sunstar was fraudulently joined as a defendant.  In support of this position, Ridgestone relies on Brady v. Indemnity Ins. Co., 68 F.2d 302, 303 (6th Cir. 1933).

The Court notes that several of the Code violations and emergency orders which are the subject of the City's complaint in this action occurred or were issued after the Municipal Court issued its opinion in the first case.  While it may be, as Ridgestone contends, that the language of the order in the first case is broad enough to cover these later alleged violations, the Columbus City Code does provide the option of filing a civil action as an enforcement mechanism for these later violations.  See §701.19(F), §3305.07, §4701.09(A)(7).  Under this circumstance, and without any affirmative evidence to support Ridgestone's position, the Court cannot find that there is "no purpose to prosecute the action against [Sunstar] in good faith." Rose v. Giamatti, 721 F.Supp. 906, 914 (S.D. Ohio 1989).  Consequently, the Court will not recommend the denial of the motion to remand on grounds that Sunstar has been fraudulently joined as a defendant.

## B. Remaining Issues

Ridgestone raises two additional issues in support of its position that remand should be denied.  First, it contends that

remand is not warranted because this case should not be adjudicated by a "locally-elected municipal judge." To the extent that Ridgestone relies on Cleveland Hous. Renewal Project, supra, to support this position, that case is easily distinguishable. In that case, the district court had realigned the parties to establish complete diversity but had remanded the case based on abstention under Burford v. Sun Oil Co., 319 U.S. 315 (1943). The Court of Appeals upheld the realignment of the parties, but reversed the order of remand, finding that Burford absention was not warranted. The Court of Appeals noted that, while abstention under Burford is appropriate to avoid disruption of coherent state policy, there was minimal evidence of such policy in the case before it. Here, as discussed above, there is not complete diversity between the parties. Consequently, there is no basis on which the Court could consider Ridgestone's request for adjudication in a neutral forum.

The second issue suggested by Ridgestone is that Sunstar could be viewed as a nominal party for purposes of diversity jurisdiction because it has not had control over the property since it was locked out. However, Ridgestone appears to have abandoned this argument. This assertion, while raised in the removal petition, has been relegated to footnote 13 on page 10 of Ridgestone's response to the motion to remand. Given Ridgestone's decision to back away from seriously asserting this argument, the Court will not consider it.

Having found none of Ridgestone's arguments in support of finding diversity jurisdiction to exist in this case persuasive, the Court will recommend that the motion to remand be granted to the extent it seeks remand of this case to the Franklin County Municipal Court, Environmental Division.

### C. Attorneys' Fees

The Court now turns to the City's request for attorneys'

fees under 28 U.S.C. §1447(c).  A remand of the case "may require the payment of just costs and any actual expenses, including attorney fees, incurred as a result of removal." 28 U.S.C. §1447(c).  The decision to award such fees "turn[s] on the reasonableness of the removal." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005).  That is, "[a]bsent unusual circumstances, courts may award attorneys' fees under §1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal."  Id.  Considering the arguments advanced by Ridgestone, the Court cannot conclude that Ridgestone had no objectively reasonable basis for removing the case to federal court.  Consequently, the Court will recommend that the City's motion be denied to the extent that it seeks an award of attorneys' fees.

## IV. RECOMMENDATION

For the reasons stated above, the Court recommends that the motion to remand (Doc. 9) be granted, in part, to the extent that it seeks remand of this case to the Franklin County Municipal Court, Environmental Division.  Further, the Court recommends that the motion be denied, in part, to the extent it seeks an award of attorneys' fees.

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify,

in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir.1981).


/s/ Terence P. Kemp
United States Magistrate Judge